043294/19344/MHW/JJL/SLB

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RODNEY CLEMONS,<br><br>          Plaintiff,<br><br>v.<br><br>WEXFORD HEALTH SOURCES, INC., GHALIAH OBAISI, as the Independent Executor of the Estate of SALEH OBAISI, DR. ARTHUR FUNK, RANDY PFIESTER, NICOLE DUFFIELD, JOHN BALDWIN and STEVE MEEKS,<br><br>          Defendants. | Case Number 17 cv 132<br><br>Honorable Judge Andrea R. Wood |

**MEMORADUM OF LAW IN SUPPORT OF FEDERAL RULE OF CIVIL PROCEDURE 56 MOTION FOR SUMMARY JUDGMENT**

Defendants, WEXFORD HEALTH SOURCES, INC. ("Wexford"), DR. ARTHUR FUNK, M.D. ("Dr. Funk") and GHALIAH OBAISI, as the Independent Executor of the Estate of SALEH OBAISI ("Dr. Obaisi" or "Obaisi Estate") (collectively, "Defendants"), by and through their attorneys, Matthew H. Weller, Joseph J. Lombardo and Sandra L. Byrd of CASSIDAY SCHADE LLP, and for their Memorandum of Law in Support of their Federal Rule of Civil Procedure 56 Motion for Summary Judgment, state as follows:

### I. INTRODUCTION

Plaintiff, RODNEY CLEMONS, has filed a three count Amended Complaint ("Complaint") alleging violations of his Eighth Amendment constitutional rights while he was an inmate at Stateville Correctional Center ("Stateville"). [Dkt. #21]. Plaintiff alleges that the Defendants each acted with deliberate indifference to his serious medical needs in connection with medical care he received for an ankle injury that preexisted his incarceration in the department of corrections. Plaintiff has named as defendants Wexford; Dr. Funk, Wexford's

Regional Medical Director for Northern Illinois; and the Obaisi Estate. Dr. Obaisi was the Medical Director at Stateville from August 2012 until his death in December 2017. Plaintiff further seeks injunctive relief from this Court. *Id*. Plaintiff also named as defendants various employees of the State of Illinois, however those defendants were dismissed in October 2020. [Dkt. #116].

Despite litigating this matter for five years, Plaintiff has not produced sufficient evidence against any of the Defendants to maintain this action beyond the summary judgment stage. The undisputed record before this Court demonstrates that Plaintiff has not established that any of the individual Defendants acted with deliberate indifference. Instead, this Plaintiff's claim is nothing more than his dispute about the treatment plan put in place by his medical team, an allegation that is not actionable under § 1983. As to Defendant, Wexford, Plaintiff has no evidence of an unconstitutional Wexford policy or widespread practice, or any evidence of how other inmates were treated. Likewise, Plaintiff seeks injunctive relief for medical treatment he has already received. Finally, Plaintiff has not presented any set of facts that would entitle him to punitive damages. As such, there are no genuine issues of material fact before this Court and each of the Defendants is entitled to summary judgment as a matter of law.

## II.     MATERIAL FACTS

The Defendants incorporate their Statement of Facts Pursuant to Local Rule 56.1 ("SOF") and accompanying exhibits, filed concurrently with their Motion for Summary Judgment and supporting Memorandum of Law.

### III.     ARGUMENT

A.     <u>Summary Judgment Standard</u>

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). After a motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A party can only successfully oppose summary judgment "when it presents definite, competent evidence to rebut the motion." *Essex v. United Parcel Serv., Inc.*, 111 F.3d 1304, 1308 (7th Cir. 1997).

B.     <u>Plaintiff Has Not Established the Requisite Elements of Deliberate Indifference</u>

1.     *Overview of Requirements to Sustain a Claim of Deliberate Indifference against the Individual Defendants*

Plaintiff's claims against the individual Defendants, Dr. Funk and Dr. Obaisi, fail as a matter of law because Plaintiff has not established the elements of deliberate indifference. Correctional officials are prohibited from acting with deliberate indifference to an inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Deliberate indifference has both an objective component and a subjective component: (i) the inmate must have an objectively serious medical need, and (ii) the defendant must be subjectively aware of <u>and</u> consciously disregard the inmate's medical need. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (emphasis added). The burden rests on Plaintiff to prove both elements, and, as other Courts have noted, the burden to clear deliberate indifference is high. *Roe v. Elyea,* 631 F.3d 843, 857 (7th Cir. 2011); *Hernandez v. Tex. Dep't of Protective & Regulatory Servs.*, 380 F.3d 872, 882 (5th Cir. 2004).

For purposes of this Motion, Defendants concede that under the case law, Plaintiff's claims meet the very low bar of an objectively serious medical need. Plaintiff, however, must

3

also present evidence to meet the second prong of the deliberate indifference test: that each individual defendant was subjectively aware of <u>and</u> consciously disregard the inmate's medical need. *Farmer v. Brennan*, 511 U.S. at 837. Plaintiff has failed to meet this burden.

    2.    *Plaintiff has Not Established the Subjective Elements of Deliberate Indifference*

Plaintiff has failed to produce evidence that satisfies the subjective elements of deliberate indifference. To do so, Plaintiff must establish that each individual defendant (i) actually knew of the specific medical need of which Plaintiff complains <u>and</u> then (ii) *purposely* and *deliberately* withheld treatment from Plaintiff. *Sellers v. Henman*, 41 F.3d 1100, 1103 (7th Cir. 1994) (emphasis added). "The infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." *Shockley v. Jones*, 823 F.2d 1068, 1072 (7th Cir. 1987); *Salazar v. City of Chicago*, 940 F.2d 233, 238 (7th Cir. 1991); *Duckworth v. Franzen,* 780 F.2d 645, 652-53 (7th Cir. 1985). Deliberate indifference constitutes unnecessary and wanton infliction of pain, which is "repugnant to the conscience of mankind," or which is "so grossly incompetent, inadequate, or excessive as to shock the conscience or be intolerable to fundamental fairness." *Estelle v. Gamble*, 429 U.S. at 106-07. Neither unsuccessful medical treatment, neglect, nor medical malpractice is sufficient to prove deliberate indifference. *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). As the Seventh Circuit noted in an *en banc* decision, "[e]ven objective recklessness—failing to act in the face of an unjustifiably high risk that is so obvious that it should be known—is insufficient to make out a claim." *Petties v. Carter,* 836 F.3d at 728. In other words, it is not enough to argue that reasonable medical minds may differ—as in medical negligence actions. Instead, Plaintiff must go several steps further and demonstrate that no other

4

minimally competent physician anywhere would have responded to Plaintiff's complaints in the same way Plaintiff's doctors responded. *Id.*

Furthermore, as it pertains to medical decision making, in order to infer deliberate indifference on the basis of a prison healthcare professional's treatment decision, the medical providers treatment decision must be so far afield of accepted professional standards that it raises the inference that the decision was not actually based on a medical judgment. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir.1997). A medical professional is "entitled to deference in treatment decisions unless no minimally competent medical professional would have so responded under these circumstances." *Sain v. Wood*, 512 F.3d 886, 894-95 (7th Cir. 2008). Mere disagreement with a doctor's medical judgment does not amount to deliberate indifference. *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010). Questions of whether certain forms of treatment are warranted are a "classic example of a matter for medical judgment," *Estate of Cole ex rel. Pardue v. Fromm*, 94 F.3d 254, 261 (7th Cir. 1996), and the Eighth Amendment does not entitle an inmate to demand specific care or even the best care possible. *Forbes v. Edgar*, 112 F. 3d at 267.

This is a high hurdle for an inmate to clear. As the Northern District Chief Judge recently noted when surveying case law in this area, "a prisoner's Eighth Amendment right is violated only when the treatment he receives is 'blatantly inappropriate.'" *Johnson v. Obaisi*, No. 16-CV-4046, 2020 U.S. Dist. LEXIS 13661, * 17, 2020 WL 433872 (N.D. Ill. Jan. 28, 2020) (Pallmeyer, C.J.) (internal citations omitted).

Finally, liability under 42 U.S.C § 1983 requires the provider's direct and personal involvement in the situation that causes injury to the inmate. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995); *Munson v. Gaetz*, 673 F.3d 630, 637 (7th Cir. 2012). Plaintiff has not put

5

forth evidence that would allow a reasonable jury to conclude that either Dr. Funk or Dr. Obaisi acted with deliberate indifference to Plaintiff's serious medical needs.

      i.      Dr. Arthur Funk

As it pertains to Dr. Funk, Plaintiff alleges that on November 10, 2015 he wrote Dr. Funk a letter requesting assistance in obtaining what Plaintiff describes as therapeutic shoes. [Dkt. #21, ¶33]. Plaintiff alleges that these so-called therapeutic shoes had been ordered by Dr. Obaisi in September 2014. [Dkt. #21, ¶26]. According to Plaintiff, Dr. Funk, as the "Wexford regional administrator overseeing Stateville, had the authority to approve" Dr. Obaisi's alleged order for therapeutic shoes. [Dkt. #21, ¶33]. Plaintiff contends that Dr. Funk did not respond to this single letter that was allegedly sent to him. *Id*. This is the extent of Plaintiff's allegations against Dr. Funk. Plaintiff does not make any allegations that Dr. Funk was personally involved in Plaintiff's medical care in any manner. Instead, he asserts that Dr. Funk was an administrator who could approve an order for therapeutic shoes. This is insufficient to establish liability under §1983.

First, it is important to note that Plaintiff has provided absolutely no proof whatsoever that the letter he allegedly sent to Dr. Funk was received by Dr. Funk. (SOF ¶29). If Dr. Funk did not receive the letter he could not have been on notice of Plaintiff's complaints and could not have *purposely* and *deliberately* withheld treatment from Plaintiff. Furthermore, it is well-established in this District that a single letter written by an inmate to an administrator, without more, is insufficient to establish personal involvement that rises to the level of liability of the person to whom the letter is directed. *See, e.g., Sharif v. Ghosh*, 2013 U.S. Dist. LEXIS 8529 (N.D. Ill. January 18, 2013) (a letter to Wexford's CEO was insufficient to trigger liability against the CEO for an individual inmate's medical care); *Williams v. Carter*, 2012 U.S. Dist. LEXIS 145655 at *10 (N.D. Ill. Oct. 10, 2012) (a single letter to Wexford was insufficient to

trigger liability for an individual inmate's medical care). Furthermore, in both *Sharif* and *Williams*, the court had proof before it that the letters had actually been received. No such evidence is before this Court.

Here, Plaintiff admitted at his deposition that he did not address his letter to Dr. Funk to any specific address because he thought Dr. Funk had mailbox at Stateville. (SOF ¶29). As such, Plaintiff simply placed his alleged letter to Dr. Funk in the bars of his cell to be collected by the correctional officers and expected the facility staff to make sure the letter got to Dr. Funk. *Id*. Plaintiff admitted that he did not have any proof that Dr. Funk, or anyone else for that matter, ever received his letter. *Id*. Plaintiff's actions hardly rise to the level of establishing that Dr. Funk violated Plaintiff's constitutional rights when there is absolutely no evidence before this Court that Dr. Funk was even aware of Plaintiff's complaints.

Liability under 42 U.S.C § 1983 requires the provider's direct and personal involvement in the situation that causes injury to an inmate. *Gentry v. Duckworth*, 65 F.3d at 561; *Munson v. Gaetz*, 673 F.3d at 637. Because Dr. Funk did not personally participate in Plaintiff's medical care, and because there is absolutely no evidence that Dr. Funk received Plaintiff's alleged letter, Dr. Funk lacked notice. If Dr. Funk did not have notice of Plaintiff's medical situation, he cannot be liable under §1983 and judgment should be entered in his favor.

   ii. <u>Dr. Saleh Obaisi</u>

According to Plaintiff, beginning in 2011 he made repeated requests to see a podiatrist. [Dkt. #21, ¶24]. Plaintiff, however, does not identify to whom he made these requests. Dr. Obaisi did not start working at Stateville until August 2012, (SOF ¶4), thus he cannot be liable for any complaints made prior to that. Plaintiff first saw Dr. Obaisi related to his right ankle on October 29, 2012. (SOF ¶12). At this time, Dr. Obaisi noted that Plaintiff had anold right ankle open

7

reduction internal fixation surgery and that Plaintiff was taking Naprosyn which was helping with his right ankle. *Id*. At this time, Dr. Obaisi completed a form requesting special shoes for Plaintiff and Wexford's utilization management department approved the request on November 19, 2012. *Id*. When Plaintiff saw Dr. Obaisi again in November 2012, he reported he was experiencing pain in his right ankle so Dr. Obaisi changed Plaintiff's medication to Motrin. (SOF ¶13). In March 2013, Dr. Obaisi issued Plaintiff a special needs permit for a low bunk, a right ankle brace and medical shoes. The permit was good for one year. (SOF ¶14). Additionally, Plaintiff had been issued a special needs permit for State Boots/Special Shoes by another provider on December 21, 2012. *Id*.

The next time Plaintiff saw Dr. Obaisi related to his foot pain was in November 2013. (SOF ¶15). At this time, Dr. Obaisi ordered another pair of gym shoes for Plaintiff. *Id*. Plaintiff did not complain of pain at this visit, he simply indicated that his previous pair of shoes was worn out and Dr. Obaisi ordered a new pair. *Id*. In August 2014, Plaintiff again saw Dr. Obaisi complaining that his shoe and ankle sleeve were worn out. Dr. Obaisi again ordered shoes for Plaintiff and changed Plaintiff's medication to Tylenol. (SOF ¶16). In October 2014, Plaintiff told Dr. Obaisi that New Balance shoes had helped him in the past. In response, Dr. Obaisi ordered the New Balance shoes Plaintiff requested. (SOF ¶18). Plaintiff received these shoes on November 12, 2014. *Id*.

While Plaintiff was receiving ongoing and consistent care from Dr. Obaisi for issues unrelated to his right foot and ankle and from other providers in the meantime, (SOF ¶¶19-20), on September 1, 2015, Dr. Obaisi again ordered special shoes for Plaintiff. (SOF ¶20). Plaintiff next saw Dr. Obaisi in-person in February 2016. (SOF ¶21). At this time, Dr. Obaisi prescribed an ankle sleeve for Plaintiff which he received less than two weeks later. (SOF ¶21). Dr. Obaisi

8

saw Plaintiff again on June 18, 2016. At this time, Dr. Obaisi ordered diabetic shoes for Plaintiff. (SOF ¶22). On September 18, 2016, Dr. Obaisi noted that there were no acute findings on Plaintiff's exam, ordered the pain reliever Mobic and renewed Plaintiff's medical permits. ((SOF ¶23).

The next time Dr. Obaisi saw Plaintiff, March 1, 2017, for the first time it was noted that Plaintiff's second toe was pushed against his great toe. (SOF ¶24). In response, Dr. Obaisi ordered x-rays of Plaintiff's foot and ankle and ordered Plaintiff to follow-up in two weeks. *Id*. On March 15, 2017, Dr. Obaisi reviewed Plaintiff's x-rays with him and sent a referral for Plaintiff to see a podiatrist. *Id*. This referral request by Plaintiff was approved on March 21, 2017. *Id*. While Plaintiff awaited his outside appointment with a podiatrist, he received a new ankle sleeve. (SOF ¶25).

Plaintiff was seen by the podiatrist at UIC in November 2017. (SOF ¶26). Notably, the podiatrist's recommendation was for an ankle brace which Plaintiff refused. *Id*. Since Plaintiff refused the recommended treatment, the podiatrist recommended inserts for Plaintiff's shoes. *Id*. When Dr. Obaisi saw Plaintiff upon his return from the podiatrist, Dr. Obaisi noted that Plaintiff was to have "insoles by the podiatrist in two weeks" and Dr. Obaisi referred Plaintiff for a follow-up with the podiatrist. *Id*. This request was approved by Wexford on December 5, 2017. *Id*. Dr. Obaisi passed away on December 23, 2017. (SOF ¶4).

This pattern of treatment clearly does not rise to the level of deliberate indifference to Plaintiff's serious medical needs. Notably, Dr. Obaisi's treatment of Plaintiff's foot and ankle issues is supported by Dr. Todd Wilcox. Dr. Wilcox is the Chief Executive Officer of Wellcon, Inc. and the Medical Director of the Salt Lake County Jail System. (SOF ¶8). Dr. Wilcox is a board-certified urgent care physician and is certified correctional health provider and physician.

9

*Id*. According to Dr. Wilcox, the care Plaintiff received met the standard of care and complies with contemporary standards of correctional medicine. (SOF ¶¶32, 36-38) As well, Dr. Wilcox was clear that Plaintiff's injuries are degenerative in nature and that he would have recommended that Plaintiff stay off his feet as much as possible. Plaintiff, however, continued to work in the Stateville kitchen as a chef throughout the time he is complaining his medical needs were not being treated. (SOF ¶38).

As noted above, in order for Plaintiff to prevail, he must show that no minimally qualified doctor would have responded to his complaints in the way that Dr. Obaisi responded to his complaints. *Sain*, 512 F.3d at 894-95. Here, Dr. Wilcox reviewed Plaintiff's medical records and concluded that Dr. Obaisi provided adequate care for Plaintiff. Thus, at least one "minimally competent physician" supports Dr. Obaisi's medical care. Therefore, Dr. Obaisi's actions constitute exercises in medical judgment, to which he is accorded deference under the law. Accordingly, Plaintiff cannot prove the required culpability element against Dr. Obaisi.

C.     The Totality of Care Does Not Support an Inference of Deliberate Indifference

Next, the totality of medical care received by Plaintiff does not support an inference of deliberate indifference by any Defendant. The Seventh Circuit requires that when assessing whether or not a prisoner has satisfied the extremely high burden of proving medical deliberate indifference, the Court must consider the totality of the inmate's medical care. *See Dunigan v. Winnebago Cnty.*, 165 F.3d 587, 591 (7th Cir. 1999). A Plaintiff's "factual highlights" of the record are not sufficient to deny summary judgment. *Id.* Instead, a pattern of neglect must be evident in the record. *Id.* Here, the undisputed medical record establishes that from the time Plaintiff first saw Dr. Obaisi on October 29, 2012 until Dr. Obaisi died on December 23, 2017, Plaintiff saw Dr. Obaisi for his foot and ankle-related issues no fewer than 16 times. Simply put,

the totality of medical care that Plaintiff received does not support any claim of deliberate indifference.

D.  Plaintiff's *Monell* Claim Against Wexford Also Fails

Likewise, Plaintiff's *Monell* liability claim against Wexford fails as a matter of law. Private corporations acting under color of state law may be held liable pursuant to §1983 for injuries resulting from unconstitutional policies or practices. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 822 (7th Cir. 2009). In order to recover against a corporate defendant under § 1983, a plaintiff must show that an unconstitutional policy or widespread practice exists and that deliberate indifference occurred because of that unconstitutional policy or widespread practice. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80 (1986). As the Seventh Circuit recently noted, in addressing a claim that Wexford has a policy or practice of inaction, the Plaintiff must have evidence that "the institution made a conscious decision not to act." *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 966 (7th Cir. 2019). Plaintiff's *Monell* claim fails for three reasons.

First, Plaintiff alleges that Wexford had a policy of exhibiting deliberate indifference to serious medical needs by claiming that Wexford denied Plaintiff therapeutic shoes and specialized medical equipment in order to reduce the costs of the medical care it provides at Stateville. [Dkt. #21, ¶¶ 27, 28, 30 & 50]. Plaintiff, however, has produced no evidence of such a policy.

Without a such a policy, Plaintiff's only remaining avenue to establish a *Monell* claim against Wexford is evidence of a widespread practice of "exhibiting deliberate indifference to serious needs." Looking past the undefined and conclusory nature of Plaintiff's allegation that Wexford maintains a policy designed to violate the constitution, Plaintiff has produced no

11

evidence of how other inmates were treated in order to support a "widespread practice" showing. In order to claim a "widespread practice," a prisoner needs evidence of how other inmates were treated in order to show that his treatment was not a "random event" but truly the work of a corporate policy. *Grieveson v. Anderson,* 538 F.3d 763, 774 (7th Cir. 2008). Conclusory, factually unsupported allegations about the experience of other inmates are insufficient to prove *Monell* liability against Wexford. *Haywood v. Wexford Health Sources, Inc.,* No. 16-CV-3566, 2017 U.S. Dist. LEXIS 28416, * 11 (N.D. Ill. Mar. 1, 2017). Here, Plaintiff's claims of a "widespread practice" is limited to his own experience. Thus, he cannot proceed on a widespread practice theory.

In other words, Plaintiff claims that Wexford has an unconstitutional policy, but he has no evidence of that policy; and claims that Wexford has an unconstitutional widespread practice that affects "prisoners with foot-related injuries and conditions like [Plaintiff]", [Dkt. #21, ¶55], but cannot show this Court anything other than his own experience to support a widespread practice at the prison. His *Monell* claim fails as a matter of law.

Second, even if Plaintiff had evidence of an unconstitutional policy or widespread practice, he still fails the second hurdle of a *Monell* claim—that deliberate indifference actually occurred because of that policy or widespread practice. *Pembaur*, 475 U.S. at 479-80. In order to meet the second prong of a *Monell* claim, Plaintiff must show that the supposed unconstitutional policy was the "direct cause" or "moving force" behind the alleged deliberate indifference. *Minix v. Canarecci,* 597 F.3d 824, 832 (7th Cir. 2010). As noted above, no individual provider displayed deliberate indifference. Accordingly, no Wexford policy or widespread practice could have been the driving force of deliberate indifference, as *Monell* requires.

E.   Injunctive Relief

Plaintiff's claim for injunctive relief fails as a matter of law. Plaintiff has received custom footwear and surgery, (SOF ¶¶30-31), therefore his prayer for injunctive relief is moot and that claim should be denied. *Powell v. Godinez*, 1997 U.S. Dist. LEXIS 14852, at *7 (N.D. Ill. Sept. 24, 1997).

F.   Plaintiff's Claim for Punitive Damages Fails

Finally, Plaintiff's claim for punitive damages fails. Plaintiff has not proven any set of facts that would allow him to recover punitive damages against any of the defendants. Punitive damages may be awarded under §1983 only "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Schaub v. VonWold*, 638 F.3d 905, 922-23 (8th Cir. 2011).

Here, it is undisputed that Plaintiff received frequent medical care from the medical staff at Stateville. Even if this Court determines that there is a genuine issue of material fact as it relates to Plaintiff's care, Plaintiff has not put forth any evidence suggesting that any of his healthcare providers acted with the level of evil motive or intent required for Plaintiff to recover punitive damages. Thus, even if this Court finds against any of the Defendants as it relates to Plaintiff's deliberate indifference claim, it should still grant summary judgment on Plaintiff's punitive damages claim.

Further, as it applies specifically to the Obaisi Estate, numerous judges in this district have held that it would be inappropriate to impose punitive damages against Dr. Obaisi's Estate. *Flournoy v. Estate of Obaisi,* No. 17-CV-7993, 2020 U.S. Dist. LEXIS 171343, * 46, 2020 WL 5593284 (N.D. Ill. Sept. 18, 2020) ("Imposing punitive damages on Obaisi's estate would not serve those ends. Obaisi is deceased, so can be neither punished for his conduct nor deterred from

repeating it.") (Shah, J.); *Snow v. Obaisi,* No. 17-CV-4015, 2021 U.S. Dist. LEXIS 185414, * 29, 2021 WL 4439421 (N.D. Ill. Sept. 28, 2021) ("In response, Plaintiff correctly concedes that the law precludes recovery of punitive damages from the estate [of Dr. Obaisi].") (Blakey, J.); *Zavala v. Obaisi,* No. 17-CV-3042, 2021 U.S. Dist. LEXIS 58745, * 38, 2021 WL 1172774 (N.D. Ill. Mar. 29, 2021) (Pacold, J.)

As Judge Shah noted, the purpose of punitive damages is to "punish blameworthy behavior and deter defendants from committing future bad acts." *Flournoy*, 2020 U.S. Dist. LEXIS 171343 at * 46. "Imposing punitive damages on Obaisi's estate would not serve those ends. Obaisi is deceased, so can be neither punished for his conduct nor deterred from repeating it." *Id.* That reasoning applies here. Dr. Obaisi is deceased and can be neither punished for his conduct in this case nor deterred from repeating it. Accordingly, even if this Court determines that the issue of punitive damages as they apply to Wexford or Dr. Funk should move forward, this Court should bar punitive damages against the Obaisi Estate.

## CONCLUSION

WHEREFORE, Defendants, WEXFORD HEALTH SOURCES, INC., DR. ARTHUR FUNK and GHALIAH OBAISI as the Independent Executor of the Estate of DR. SALEH OBAISI pray that this honorable Court enter an Order granting Summary Judgment in their favor, dismissing the case with prejudice against Plaintiff, awarding fees and costs for having to defend this meritless claim and for any other relief deemed just.

Respectfully submitted,

WEXFORD HEALTH SOURCES, INC., ARTHUR FUNK, M.D., GHALIAH OBAISI, as the Independent Executor of the Estate of SALEH OBAISI

By: /s/ *Sandra L. Byrd*

14

        Matthew H. Weller, ARDC No. 6278685
        Joseph J. Lombardo, ARDC No. 6306466
        Sandra L. Byrd, ARDC No. 6237865
        CASSIDAY SCHADE LLP
        222 West Adams Street, Suite 2900
        Chicago, IL 60606
        (312) 641-3100
        (312) 444-1669 – Fax
        mweller@cassiday.com
        jlombardo@cassiday.com
        sbyrd@cassiday.com

**CERTIFICATE OF SERVICE**

I hereby certify that on April 8, 2022 I electronically filed the foregoing document with the clerk of the court for Northern District of Illinois, Eastern Division, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of E-Filing" to the attorneys of record in this case.

/s/ *Sandra L. Byrd*

11021968